IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JESUS ALVAREZ MEJIA, | ) | No. 1:05-cv-0545-PHX-GMS |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| D. CANO, | ) ) | |
| Defendant. | ) ) ) | |

Pending before the Court is the Motion for Summary Judgment of Defendant D. Cano. (Dkt. # 33.) For the reasons set forth below, the Court grants the motion.

**BACKGROUND**

Plaintiff Jesus Alvarez Mejia is a former inmate of California State Prison Corcoran ("COR"). Defendant D. Cano was a Correctional Counselor I ("CCI") in the Administrative Segregation Unit at COR during all times relevant to this matter. On April 1, 2004, there was a riot at COR between White and Southern Hispanic inmates. Prior to the riot, Plaintiff was in the process of preparing a habeas corpus petition with the help of another inmate.

In her declaration, Defendant states that shortly after the riot, she "was given a list of inmates who were believed to be involved in or were in the vicinity of the riot, and prepared those inmates's [sic] files for [Institutional Classification Committee ("ICC")] review." (Dkt. # 33 Pt. 3 at 2.) The ICC makes decisions regarding inmate placements. Defendant

1  affirms that she "was not involved in investigating or determining who was involved" in the
2  riot and her involvement in the ICC's decisions "was limited to pulling the inmate's central
3  file (C-file), ensuring the paperwork was in order, and recommending to transfer an inmate
4  who meets the criteria provided to [her]." (*Id.* at 1-2.) Plaintiff never informed Defendant
5  that he was in the process of filing a habeas corpus petition.

6        On April 8, 2004, Plaintiff was placed in administrative segregation because he was
7  physically present in the area of the riot and was suspected of being a participant. In her
8  declaration, Defendant states that she did not order or place Plaintiff "in administrative
9  segregation on April 8, 2004, nor was [she] involved in that decision." (*Id.*) Plaintiff does
10 not dispute this fact. On April 19, 2004, Plaintiff appeared before the ICC, which decided
11 to extend his detention in administrative segregation pending the prison's investigation into
12 his involvement in the riot because he presented "a threat to the safety and security of the
13 institution." (Dkt. # 33 Pt. 4 at 16.)

14       On June 6, 2004, Plaintiff was cleared of involvement in the riot and the charge of
15 "Participation In A Riot" was dismissed. (Dkt. # 11 at 11.) However, on July 1, 2004, the
16 ICC continued Plaintiff's detention in administrative segregation "pending [Classification
17 Staff Representative ("CSR")] review for transfer" because of concerns for Plaintiff's safety
18 due to the "continued racial tension" in the general prison population concerning the riot.
19 (Dkt. # 33 Pt. 4 at 18.) Plaintiff does not dispute these facts.

20       Defendant's declaration states that she "was not involved in the committee's decision
21 to keep [Plaintiff] in administrative segregation pending his transfer to another facility," nor
22 was she "involved in the committee's decision to transfer [Plaintiff] to another institution"
23 and "[a]s a CCI, [she] did not have the authority to order the transfer of an inmate to another
24 facility." (Dkt. # 33 Pt. 3 at 2.) Plaintiff has not provided any evidence to suggest these
25 statements are inaccurate.

26       In July 2004, Plaintiff filed a 602 Inmate Appeal requesting that he be released from
27 administrative segregation. Defendant provided the informal response and denied the 602
28

Inmate Appeal based on the July 1, 2004 decision of the ICC. (Dkt. # 11 at 5 ("[P]er ICC 7-1-04 [Plaintiff is] to remain in [administrative segregation] pending transfer.").) On September 15, 2004, Plaintiff again appeared before the ICC, which "rescind[ed] 7-1-04 transfer recommendation due to Annual Review" and continued Plaintiff's detention in administrative segregation pending his review. (Dkt. # 33 Pt. 4 at 19.) On October 20, 2004, Plaintiff received his annual review before the CSR who approved Plaintiff's transfer to another institution and also approved "[r]etention in [administrative segregation]" pending the transfer. (*Id.* at 20.) On November 1, 2004, Plaintiff was transferred to the California Correctional Center ("CCC"). At the time of Plaintiff's transfer, the statute of limitations for his habeas petition had not yet run. Plaintiff did not request an extension for time to file his petition, nor did he include an explanation for its untimeliness when the petition was actually filed.

On June 29, 2007, Plaintiff filed his Amended Complaint against Defendant D. Cano asserting claims under 42 U.S.C. § 1983. (Dkt. # 11.) Defendant moved for summary judgment on April 6, 2009. (Dkt. # 33.)

**DISCUSSION**

**I.     Standard of Review**

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.     Analysis

Plaintiff alleges two claims under 42 U.S.C. § 1983: (1) that he was detained in administrative segregation for a prolonged time period and subsequently transferred to another correctional institution because of his race, and (2) that he was denied access to the courts as a result of the discriminatory detention in administrative segregation and subsequent transfer. (Dkt. # 11.) Plaintiff contends that his prolonged detention in administrative segregation and his transfer caused him to lose his right to file his habeas corpus petition due to untimeliness. (*Id.* at 3-4.) Plaintiff claims his petition paperwork was lost when he was transferred because another inmate at COR who was helping Plaintiff with his petition had possession of Plaintiff's documents. (*Id.*) When Plaintiff was transferred, he was allegedly unable to file his petition on his own because he does not read or write English proficiently and did not possess his documents. (*Id.*) Defendant argues that she is not liable for the alleged constitutional violations because she did not place or detain Defendant in administrative segregation or transfer him to another institution, nor did she have the authority to release Plaintiff from administrative segregation or to transfer him to another correctional facility. (Dkt. # 33 at 3.)

Assuming Plaintiff's constitutional rights were deprived, to prevail on his § 1983 claims, Plaintiff "must connect [the] named defendants clearly with [the] claimed denial of his rights." *Woodward v. Subia*, No. CIV S-07-498 JAM KJM P., 2008 WL 4196692, at *3 (E.D. Cal. Sept. 11, 2008); s*ee also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that [§] 1983 liability arises only when defendant was a personal participant); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) (holding "[n]o liability could attach under [§] 1983 unless a plaintiff was able to show that the named defendant 'personally participated' in the alleged violation of civil rights."). A person may be connected to a constitutional violation by direct personal participation in the deprivation or by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injury." *Johnson*, 588 F.2d at 743-44. Direct personal

1  participation includes an affirmative act, participation in another's affirmative act, or an
2  omission to perform an act that a person is legally required to do that causes the
3  constitutional deprivation. *Id.* at 743.

4  Here, Plaintiff alleges that Defendant caused his prolonged detention in administrative
5  segregation and his transfer, and therefore his untimely habeas corpus petition, because
6  Defendant was Plaintiff's counselor, recommended to the ICC actions to be taken against
7  him, and denied his 602 Inmate Appeal. (Dkt. # 36 at 1-2.)  Plaintiff, however fails to
8  produce evidence supporting his allegations. Plaintiff merely cites Defendant's declaration
9  (Dkt. # 33 Pt. 3 at 1-2) as support for his assertions. (Dkt. # 36 at 2.)

10 However, Defendant's declaration states her involvement "was limited to pulling the
11 inmate's central file (C-file), ensuring the paperwork was in order, and recommending to
12 transfer an inmate who meets the criteria provided to [Defendant]." (Dkt. # 33 Pt. 3 at 1-2.)
13 Defendant states she was "given a list of inmates who were believed to be involved in or
14 were in the vicinity of the riot" and she was to recommend these inmates for transfer by
15 preparing the listed inmates' paperwork for ICC review. (*Id.*)  In her declaration, Defendant
16 states she was not involved in determining which inmates were placed on the list (*id.*), and
17 therefore suggests she did not have authority to make recommendations for detention or
18 inmate transfers based on her own personal authority or judgment, but instead, her
19 involvement and authority in recommending Plaintiff for transfer was limited to processing
20 paperwork in compliance with others' investigative findings and recommendations. (*See
21 id.* (stating Defendant was "not involved in investigating the riot or determining who was
22 involved").)  Plaintiff has provided no evidence to the contrary.

23 Summary judgment is proper for lack of causation when a defendant is found to
24 simply be performing her "ordinary administrative functions" in reliance on another's
25 personal knowledge, investigation, and recommendation. *See Holbrook v. Walters*. 296 F.
26 App'x 230, 233 (3d Cir. 2008).  In *Holbrook*, a case similar to the one before the Court,
27 plaintiff alleged his civil rights were violated when he was placed in administrative
28

1  segregation and transferred to another prison in retaliation for his filing grievances and
2  because of his religious affiliation. *Id.* at 232. Three of the defendants in *Holbrook* were
3  members of a Program Review Committee which approved plaintiff's detention in
4  administrative custody pending a transfer to a long term segregation unit. *Id.* Their decision
5  was based upon a review of a memorandum provided by "Walters", a prison employee,
6  describing his personal observations, concerns, investigations, and recommendations
7  regarding the plaintiff, as well as a review of other information. *Id.* at 231-32. Summary
8  judgment was granted in favor of these defendants because their actions demonstrated that
9  they did nothing "other than perform their ordinary administrative functions in reliance on
10 Walter's memorandum," and therefore they were not the cause of any alleged violations. *Id.*
11 at 233. In this case, Defendant was similarly acting in reliance of others' investigation and
12 information she was provided. (*See* Dkt. # 33 Pt. 3 at 1-2.) Plaintiff has not provided any
13 evidence to suggest that Defendant had the authority to disregard the list of inmates she was
14 given or that she exercised her own judgment and authority in making recommendations to
15 the ICC for inmate detention or transfer.

16 Defendant asserts in her declaration that she did not place Plaintiff in administrative
17 segregation and was not involved in the decisions of the ICC to extend Plaintiff's detention
18 in administrative segregation or the decisions to transfer Plaintiff. (*Id.*) Plaintiff has
19 provided his denied 602 Inmate Appeal requesting that he be released from administrative
20 segregation as evidence that Defendant is responsible for his detention because she signed
21 the denial. (Dkt. # 11 at 5.) However, the 602 Inmate Appeal states the request was denied
22 "per ICC 7-1-04" (*id.*), and Plaintiff has presented no evidence showing that Defendant was
23 involved in the decision made by the ICC or that Defendant had authority to override the
24 ICC's decision.[1] Plaintiff presents no evidence to show Defendant committed an affirmative
25 act or participated in another's affirmative act, other than signing the denial of the 602

---

[1] In her declaration, Defendant denies having authority to override the ICC's decision.
(Dkt. # 33 Pt. 3 at 2.)

- 6 -

Inmate Appeal and processing paperwork for the ICC hearing. (*Id.*; Dkt. # 33 Pt. 3 at 1-2.) These actions are not sufficient to establish a causal connection between the alleged constitutional injuries and Defendant. *See Ornelas v. Giurbino*, 358 F. Supp. 2d 955, 973 (S.D. Cal. 2005) (holding that the granting of a motion to dismiss was proper for lack of personal involvement by a defendant who had denied plaintiff's 602 Inmate Appeal).[2]

Additionally, Plaintiff states several times that Defendant may not be at fault for his detention in administrative segregation and his untimely filing of his habeas petition. (Dkt. # 33 Pt. 2 at 1, 3; Dkt. # 36 at 1; Dkt. # 33 Pt. 4 at 13 (Plaintiff states in his deposition that he doesn't "know if she's responsible or not" and "I do not know who did it.").) He does not dispute that he was originally placed in administrative segregation because he was suspected of being a participant in a prison riot. (Dkt. # 33 Pt. 2 at 1; Dkt. # 36 at 1.) He does not dispute that Defendant was not involved in his initial placement in administrative segregation. (Dkt. # 33 Pt. 2 at 2; Dkt. # 36 at 1.) Nor does he dispute that after he was cleared of riot involvement the ICC decided to continue his placement in administrative segregation and transfer him to another facility for his own safety and the security of the prison because of continued racial tensions at the prison surrounding the riot.[3] (Dkt. # 33 Pt. 2 at 2; Dkt. # 36 at 1.) He does not dispute that he was detained in administrative segregation pending his annual review, after which he "was kept in administrative segregation because the CSR approved [Plaintiff's] transfer to another institution" and that Defendant was not involved in this decision to transfer Plaintiff. (Dkt. # 33 Pt. 2 at 3; Dkt. # 36 at 1.) Plaintiff

---

[2] The plaintiff in *Ornelas* filed a 602 Inmate Appeal complaining of sexual misconduct by a prison official. 358 F. Supp. 2d at 973. The plaintiff alleged that the defendant that denied his 602 Inmate Appeal (Stokes) "failed to protect him from harm from staff members" and "denied [p]laintiff his due process rights when he failed to take appropriate action in [the] matter and denied the 602 Inmate appeal that went before him." *Id.* The court held the denial of the 602 Inmate Appeal alleging sexual misconduct did not show there was any personal involvement by Stokes in the alleged sexual misconduct and dismissed the claims against him. *Id.*

[3] Plaintiff states in his deposition that his safety was threatened because of his perceived involvement in the riot. (Dkt. # 33 Pt. 4 at 8.)

- 7 -

also admits in his deposition that he "does not know if she's [Defendant] responsible or not" for hindering Plaintiff from filing his habeas corpus petition and that he does not know who violated his constitutional rights. (Dkt. # 33 Pt. 4 at 13.)

Based upon the evidence, no reasonable jury could find the requisite causal connection between Defendant and the constitutional violations alleged. Summary judgment cannot be defeated without affidavits or other evidence to support Plaintiff's allegations. *See Taylor*, 880 F.2d at 1045-46 (holding summary judgment was properly granted due to a defendant's lack of personal participation in a § 1983 denial of access to the courts claim because the plaintiff merely set forth allegations that the defendant had personally stopped law clerks and law books from being presented to the plaintiff without presenting affidavits or other evidence to support the allegations). Here, Plaintiff has failed to show through affidavits or other evidence that Defendant was responsible for, or a personal participant in, placing and continuing to detain Plaintiff in administrative segregation, transferring him to another facility, or preventing him from filing his habeas petition.

## CONCLUSION

Plaintiff has not presented evidence that would allow a reasonable jury to find that Defendant is causally connected to the alleged discriminatory detention and subsequent transfer of Plaintiff or that she is causally connected to Plaintiff's alleged denial of access to the courts. Therefore, an essential element of Plaintiff's § 1983 claims is lacking.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Dkt. # 33) is **GRANTED**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to **TERMINATE** this action.

DATED this 10th day of August, 2009.

_____
G. Murray Snow
United States District Judge